Okay, come on up. Our next case is number 23-12826 Madhu Sudham Kanapuram. Kanapuram, you'll tell me how to correctly pronounce the name against the director of USCIS. Thank you, your honor. And Mr. Banias. Thank you, your honor. Good morning and may it please the court. My name is Brad Banas. I represent the Kanapurams. Kanapurams, okay. The government refuses to make a final decision on my client's green card applications based on a misapprehension of law. Not an exercise of discretion, a misapprehension of law. For that reason, this court should correct that legal error, reverse this case and send it back for a determination of whether the delay has been unreasonable. Well, here, let me tell you my perspective on the case. So I'm sympathetic to your position, but I think I lost that battle in this circuit years ago. So we had a case called Patel and in Patel, a US citizen who was trying to bring over a relative, I'm paraphrasing, it's always bad to paraphrase the immigration code, but was trying to bring over a relative. And to do that, the citizen had to prove certain things to the satisfaction of USCIS. And the default burden of proof for the citizen to do that was preponderance of the evidence. USCIS applied a beyond a reasonable doubt standard. But the ultimate decision on whether to allow the citizen to bring in the relative was committed to the discretion of the Attorney General. My view was that you could correct the preceding legal error about the burden of proof, although at the end of the day, you couldn't review the final decision of the Attorney General through USCIS. So you could send it back and tell USCIS, hey, you applied the wrong burden of proof, go back and apply the right burden of proof. And when it did, then that decision was unreviewable. I lost that battle in Patel and I dissented because the court read 1252B2, whatever the subsection is, much more broadly than I think it should have been read. So where does that leave you? Your Honor, I assume that's the Patel that went to the Supreme Court and is cited in our brief overnight. Not Patel, I'm sorry. I gave you the wrong side to a case, not Patel. I was not involved in Patel at the panel stage. I'll think of the right case. It was not Patel. So I'm very, very sorry. Um, I'll think of a case and I'll find it. It'll come to my head, I hope. But I think I can answer your question. Patel was not that sort of a case. But the case I'm thinking of, Judge Grant wrote the opinion for the panel. And the basic thrust of the majority opinion was that this ban on judicial review of discretionary decisions extends further up the decision tree and doesn't just rest on the ultimate decision to do something or not do something. So, yes, Your Honor, I think looking at the language of 1252A2B1 and A2B2, those are the two provisions that preclude review according to the government. They both require action. They both require something to happen. And that has to be a discretionary determination. Here, the government on page six of the brief says, we cannot make a decision, a final decision, unless there is a visa that is current at approval. That is a legal statement. There is no exercise of discretion. The government... Okay, let's just talk about the language of the... So you've got the jurisdiction stripping provision and the savings clause. And so you're talking about the jurisdiction stripping provisions now. Right? Correct, Your Honor. You're saying this doesn't... Okay. Where does that say action? I mean, it says action, but it says, regardless of whether the judgment decision or action is made in removal proceedings, no court shall have jurisdiction. So I guess the question would be, is this a decision or a judgment that you're asking us to review? So two things, Your Honor. I think that the subsections below, that's kind of the introduction. A2, B1, and 2. Those are the relevant terms we need to look at. The language you just cited, Your Honor, is really important language. And if you look at two cases out of the Supreme Court, since this brief has been filed, one called Wilkinson, one called Barufa, they will indicate exactly where that language is from. That language was meant to correct the Supreme Court's decision in the 90s in St. Cyr. It was simply to channel all challenges to removal orders into the circuit courts, removal orders. My clients aren't in removal proceedings. They're lawful non-immigrants right now with a pending adjustment of status application. One of our arguments in our brief, Your Honor, is this section simply doesn't apply. Yeah, I guess, just let's talk about the language of the statute. I just, I'm having trouble. This is a really broadly written jurisdiction stripping provision. And then you got the savings clause. But just start with just the question of whether what you're challenging here fits under the text of this There's the little I and the two I. And they say any judgment regarding the granting of relief under section 1255 of this title. So let's just start with little I. I mean, aren't you challenging a judgment regarding the granting of relief under section 1255 of the title? No, Your Honor. There's been no judgment. Well, they've decided not to do the thing that you're asking them to do under 1255. They haven't decided that. They don't think they can because of a misapprehension of law. How is that distinction a distinction with a meaningful difference? Your Honor, we saw it in the... I mean, if I, I guess I don't think I can do something. How is that not a judgment regarding the granting of relief? I don't think I can grant that relief. You don't exercise discretion to make a decision if you do not think you have the authority to exercise that discretion. But the word discretion doesn't show up in this statute. It does, Your Honor. It governs granting of discretionary relief. That's the title. Oh, okay. And I would also point out the word relief in the language you just used is known nowhere in the applications for adjustment of status with USCIS. That's a term exclusively used in removal proceedings. We're not in removal proceedings. This statute is designed to prevent arguments in district court about a removal order. That's what we learned in Wilkinson. That's what we learned in Patel. That's what we learned in Barufa that just came out, Your Honors. Can I ask you a question about the merits, which will help me understand the jurisdictional issue? Yes, Your Honor. If you prevail on the jurisdictional issue and you go back down, and let's say you convince the district court that you're right on the merits, what relief are you asking for? For your clients to jump the line? No, Your Honor. With a non-existent visa? Well, Your Honor, there are tens of thousands of immigrant visas available today that my clients qualify for. Every October 1st, there's a whole new batch under 8 USC 1151. They can only do 27% per fiscal quarter. We're in the second fiscal quarter. If this case is remanded, it would be with the understanding that we would go and decide whether this is an unreasonable delay. My clients filed in 2020, October of 2020. They've been waiting four and a half years, and they should have gotten a decision in that time. That would be up to the district judge. We'd look at the track factors, which I'm sure Your Honors are familiar with. But what decision do you want? You just don't want a decision that says, no, we have to wait. You want a decision that says, you win, we're going to give you a visa, and the visa is going to let you get permanent residency. Your Honor, I think the decision we want would to say that this in fact is an unlawful withholding. Because the agency is operating under a misapprehension of law that a visa must be current at approval. The statute only requires to be current at filing. Regulations only required to be current at filing. The policies aren't written. This is just something they refused to do based on a memo written in 1977 that said, yes, Congress changed the statute, but we don't think it changed anything. But if that's the relief you want, and you think they're operating under a misapprehension of law, why isn't Judge Brasher right that that's a judgment that the jurisdiction stripping provision covers? Because no case in the Supreme Court has said that judgment under 1252A2B1 or action under 1252A2B2 relates to inaction and unreasonable delays or unlawful withholding cases. The Ninth Circuit recently just limited that to cases where you actually have a denial of a grant of relief. That is an individual case. It doesn't apply to more policy challenges. Now, this is not a policy challenge because I have one individual who they just want their green cards. But I would point out, first off, 1252A2B2, which the Fifth Circuit and the Eighth Circuit relied on, should be ignored here. 1252A2B1 specifically talks about precluding review over certain decisions related to adjustment of status applications. If we then look at 1252A2B2 as some sort of broader or catch-all, it renders completely superfluous 1252A2B1. So it's either 1252A2B1 or nothing. And I would point to the word judgment is meaningful. We're under the Administrative Procedure Act. That term is not defined under the APA. The APA defines the term agency action. Congress could have used that, but they chose not to. And so we are being deprived of agency and action. I think the way in which two is broader than one is if you read judgment narrowly, as you're suggesting we read it, then you would then go to two and it says, and any other decision or action. So then it has decision or action in two. So you could be right that the right reading of judgment in little I is narrow, but then you would still then have to show any other decision or action, right? And your Honor, if I may address that, if my time is up, 1252A2B2 can only be triggered by a statute that's under a Supreme Court case from 2010 called Kukana. Here, the agency relies on a policy, not even a regulation, to refuse to decide these applications. That's not sufficient to trigger 1252A2B2 because again, it says an agency or deemed discretionary under this subchapter, not somewhere in the agency's policy. Right, but isn't the adjustment of an alien by the Attorney General a discretionary question for the Attorney General? The ultimate decision as Judge Jordan noted is, but it is not discretionary and the government does not dispute that they are required to make a final decision on an adjustment of status application. There is a distinction between whether there is a duty to make a decision versus what that decision is. We are not asking for approvals, we're asking for a decision. Thank you, Your Honors. All right, thank you very much. Faso. Good morning, Your Honors. May it please the court, Alessandra Faso on behalf of the government. Before this court is a request by the appellants to essentially overhaul the system by which USCIS and the State Department adjudicate applications for permanent residence or green cards. This system was explicitly and painstakingly designed by Congress and the district court below did not err in determining that it lacks subject matter jurisdiction over these claims. I'll note that the Fifth Circuit and the Eighth Circuit both determined that subject matter jurisdiction does not exist with respect to these types of challenges. And the First Circuit and the Ninth Circuit went to the merits of these claims and determined that the appellants were incorrect in their reading of 8 U.S.C. 1255. So this court has multiple different opportunities in order to dispose of this case and to affirm. I thought the others, I mean, so I thought the Fifth and the Eighth made sense in the sense that they started with jurisdiction and then went finding that there was no jurisdiction, didn't reach the merits. I thought the First Circuit was sort of strange in the sense that it sort of like assumed jurisdiction and then went to the merits. I didn't know that was something we could do. Your Honor, it was a surprising outcome and we did brief the same issue, the 1252 issue. And so while we were hoping for a jurisdictional win in the First Circuit. I mean, is there, well. The First Circuit has some older law that says I think contrary to our precedent that if you have a statutory jurisdictional problem, you can bypass that and go to the merits. If you've got a constitutional jurisdictional problem, you cannot. And so I think from my reading of the First Circuit opinion, the panel there relied on older First Circuit precedent saying in a statutory jurisdiction issue, you can bypass it if you're going to rule for the party who was arguing for no jurisdiction. So I think, I guess that's just a feature of First Circuit law. Correct, yes. They concluded that Article III jurisdiction existed. So the fact that the 1252 was potentially jurisdiction stripping, they can bypass that. So do we have something similar? Or I thought our law was generally that we always address jurisdiction first. That is my understanding, Your Honor. And the government would welcome this court to join the Fifth Circuit and the Eighth Circuit in determining that there is no jurisdiction over these things. Let's just proceed on the assumption that we have to address jurisdiction first. And so to me, it seems like the main argument about the jurisdiction stripping statute here is that there's no final decision that's been reached on these applications for green cards. And so they can sue to challenge the delay, even though they may not be able to choose, sue to challenge the ultimate decision. What do you say about that? Your Honor, the government's position on that argument is that even though there is no final decision on these particular applications, USCIS has made a judgment here, a judgment to hold the cases in abeyance because an immigrant visa has become unavailable to those applicants. And even though there's no final decision to challenge, we must look to 1255 to determine that Congress provided the Secretary of Homeland Security with considerable discretion to not only grant or deny an adjustment application, but to promulgate regulations in order to essentially make this process work. And whether or not there's a final decision yet doesn't necessarily matter because each step in the process, including the decision to hold applications when an immigrant visa becomes unavailable at no fault of the applicant, that is a judgment regarding the granting of relief expressly contemplated in subsection one. Judgment also has, I mean, in a lay sense of the word, you're right. Judgment could extend to that as Judge Brasher, I think, explained a little bit before. But isn't judgment being used here in a jurisdiction stripping statute in a formal legal sense? Like what do we understand the judgment to be? And that is a decision that resolves something one way or another or gives a view one way or another by the adjudicator? Perhaps, Your Honor, but we can look to Patel and I know that this court is familiar with Patel. And the Supreme Court determined that the word judgment as used in 1252 A2B1 means any authoritative decision that encompasses any and all decisions relating to the granting or denying of relief. And so that broad interpretation of the word judgment necessarily involves the precise judgment we're talking about today. Well, that sounds a little odd. So that seems to suggest that a decision not to decide is a judgment. And that just, it's hard to sort of get your hands around that in a grammatical sense. A decision to not decide, I would disagree with that. I would instead posit that it was a decision to postpone adjudication until a favorable exercise of discretion can be made. And so- Well, they're not deciding. They're not deciding yet. They're not, the government is not refusing to adjudicate the applications. It's never said that it will never adjudicate these applications. In fact, if the government determined that one of the appellants was perhaps statutorily ineligible for the benefit, it could deny the application right now. It just can't favorably adjudicate with a grant of a green card to those individuals because there are no visas available to them. Right. Let me ask you this. So the Fifth Circuit and the Eighth Circuit didn't go under little I, they went under double I. Correct. And so opposing counsel's argument on that is that there's no statute that exercises this form of discretion. Could you address that? Yes, the government disagrees. It's very clear that 8 U.S.C. 1255 subsection A expressly provides discretion to the attorney general and in this case, the Secretary of Homeland Security to adjust the status of a foreign national if they merit the exercise of discretion, or if they merit a favorable exercise of discretion. And while my opponent states that the government is not exercising discretion because they purportedly don't have a choice in granting an adjustment application because a visa is not available, I'll note that subsection two does not expressly use the phrase exercise of discretion. It uses the phrase any other decision or action for which the discretion of the Secretary is provided by under the subsection. Just to kind of paraphrase. So the authority for the decision or action in this case is discretionary based on 8 U.S.C. 1255 A. Yeah, so is the discretion here, let me just see if I'm understanding this right. I mean, is the discretion here is that there are no visas available because of this confusing reason. And they could just deny these applications because they don't have any available to give them, or they could hold them in advance. And they've chosen instead of just flat out saying, look, you can't get these because we don't have any available. They've decided to hold them in advance through this kind of rolling system. And maybe they'll have some available in the future. Is that the exercise of discretion? Or is it like the promulgation of the regulations themselves? Well, the former would be the exercise of discretion here. I will note that there is a regulation that requires a visa to be available before the State Department can issue that green card. But that's also part of the Attorney General's power to promulgate regulations as required. And I'll briefly discuss kind of the history of the statute. Initially, Congress required a visa to be available at filing and at approval. And then they took away the requirement that the visa needed to be available at filing and just required it to be available at approval. The most recent version of the statute, Congress flip-flopped, took away available at approval and required that the visa be available at filing only. And so in the backdrop of these congressional amendments, you have the Attorney General's discretion kind of changing throughout that history. So the Attorney General's discretion started off pretty tight, and then it kind of grew. And so in the statute that we have now, the Attorney General can promulgate regulations as required and can adjust the status of an individual in their discretion. And the reason why Congress took away that requirement that a visa be available at filing and approval was because they realized that these adjudications were kind of going a long time. They were lengthy delays. And of course, that is still the case today. But in the event that a visa wasn't available when that application came across an adjudicator's desk, to deny that application just because a visa isn't available anymore due to the passage of time, and as I mentioned earlier, at no fault of the applicant, it did not make sense for USCIS to operate in that way. And so using the discretion Congress provided to them, the agency read 1255A as allowing this practice to become the reality. And 1255B specifically requires the State Department to reduce by one the number of immigrant visas available to that applicant in their application category for the fiscal year then current. So it wouldn't make sense for the government to issue a visa to an applicant upon approval as my opponent would have this court determine to assign that person a visa when they apply before the government even knows if they meet the threshold requirements to have that person take up that slot. And then let's say in two years when the adjudicator is able to finalize the determination and exercise their discretion favorably, then they take another visa away because the Secretary of State has to reduce by one the number of visas for the fiscal year then current. So it doesn't make sense when we read subsection A and subsection B together, that procedure is not workable under the statute that Congress enacted. And so I know I'm getting into the weeds of how the adjustment of status statute works. And there are a ton of discretionary decisions that the agencies have to make day in and day out when dealing with the amount of visa numbers available, the fluctuation in the visa bulletin. I mean, this conversation is very illustrative of why discretionary decisions to mandate and to essentially adjudicate these types of programs, why those discretionary decisions are unreviewable in federal court. I mean, these are really complex issues and the agencies have the expertise and they have been given expressed. I mean, but here's where the jurisdictional argument can get a little bit crazy, I think. Let's assume that USCIS had done the same thing here. It had postponed a decision on the Caterpillar's application for a visa and then for permanent residency. But it had done so because it just made a mathematical error about the number of visas available. And people brought it to its attention, but it just didn't do anything. So it says, oh, we're oversubscribed on visas. So we have to wait until one becomes available for you and your priority date and all that. But it turns out that USCIS is just flat out wrong and that there are 5,000 visas left in that category from that ascribed to that country. Is there review? There would not be review. And so that just seems odd to me. You can't correct an error that precedes the ultimate exercise of discretion. My response to that, Your Honor, is that the mathematical calculations of visa availability, that procedure is designated by statute and Congress has given the State Department that task. So they're estimating visas. And the reason why we're here today is because they're not accurate, right? And so, I mean, that is just part of the process. But the Supreme Court in Patel acknowledged that maybe Congress really did intend for this type of discretionary relief to be somewhat insulated from judicial review. And while in cases where maybe the agency makes a mistake, it's unfortunate. But at the same time, that is what Congress intended. And so this particular subsection does preclude this court's review of these types of cases. And if Your Honors have no further questions, we respectfully request that you affirm the district court. All right. Thank you very much. Thank you, Your Honors. Just a couple of quick points. You heard my colleague on the other side repeatedly use the word available. We're talking about a different requirement. Available is about the inventory. Are there visas for fiscal year 2025 that have gone unused, unassigned today? The answer to that is absolutely yes. The question that we're here disputing is whether they are current under the visa bulletin. And so there is no regulation, there's no statute and no regulation that requires a visa to be, quote, current or immediately available is the language of the statute at approval. This is an additional eligibility criteria that they're claiming to add on through the exercise of discretion. This would be identical to them saying, we are going to put a hold on these applications because these applicants are Muslim. We're doing it in our discretion. You can't review it. We're going to put these applications on a hold because these applicants are black. We are not doing it. It's our discretion. It's unreviewable. That's the slippery slope we're on. And so this idea that the Department of Justice would get up and say, available, available, available, we agree. And that's written into 1255B. But I guess the slippery slope argument doesn't seem to make much sense to me because they could just deny them for that basis, right? And you would agree that we couldn't review that, right? I disagree, Your Honor. They cannot deny based on the lack of a visa being current at approval because no statute requires it. No, no, my point is that if for jurisdiction purposes, had they just denied your clients their applications, we would not be here because you would agree that we would like jurisdiction to review that exercise of discretion. Your Honor, I think that's an open question right now. I think that, again, Patel is a limited decision from the Supreme Court that says after a petition for review of a removal order, you can't review factual findings related to adjustment status. The case that came out last March, Wilkinson said, well, if it's a mixed question of law, in fact, we can review it under the savings cause of 1252A2D. And so while Patel was very broad, the Supreme Court seems to be narrowing it back in. The idea that a district court decision, that we can't go to a district court and challenge a legal determination, legal determination for adjustment of status, is an open question in the court. And it's available here today. I mean, we argued that this shouldn't even apply to district court cases. But I will note, that's what's at risk here. The other thing at risk is a slippery slope, is this interpretation of judgment on relief. If we interpret that as the government suggests, we're going to get down to, well, if this person showed up late to work, and we told them that they had to take the day off, and that's why it's been delayed five years, we can't review it. We saw this in a recent case out of the Seventh Circuit called Sony, where they interpreted a different jurisdiction stripping provision, but to include every possible personnel decision that could impact the adjudication of these long-delayed benefits. And that's the slippery slope we're on. And you can see the government's arguing to the full extent. I'll just say, I feel like the slippery slope is your argument, is that literally, when anyone is denied a visa into this country, they can come into federal court and sue. That seems to be your position. Now, I think your point is, they might not have a good lawsuit. They might be wrong. There's no legal issue that they've raised, or something like that. But if these jurisdiction stripping provisions don't apply to this, don't they not apply to just straight-up denial? I mean, that's what your position was, that they wouldn't, even a straight-up denial, you could still come here and sue. That seems like the opposite of what Congress was trying to get at with these jurisdiction stripping provisions. Your Honor, I don't think the government would dispute that the district court has jurisdiction to review a denial of an immigrant visa, an I-140 or an I-130, family-based, employment-based. This is a very narrow set of cases. My clients have been lawful non-immigrants in the United States for 15 years, 15 years. This decision to hold their cases will cost them another 15 to 20 years of being in this limbo of a non-immigrant waiting to get a green card. And again, there is no statute, no regulation, no policy that supports their position. You didn't hear my colleague cite any of them and her discussion about the weeds, unfortunately, while creative, lacks any support in the congressional record. And just declaring something to be congressional intent, the clearest thing she said was that Congress repealed the requirement that there be a current visa at approval. They repealed it in 1976. And then there's a memo from INS at that time saying that repeal meant nothing. Two years later, the attorney general, who under today's statute is authorized to be the final word on what the immigration law means, agreed with our position in a case called Matter of Huang and it was reheard. And that's the attorney general's position here. For that reason, Your Honor, we would urge the court to find jurisdiction, reverse the lower court for a merits determination. Thank you, Your Honors. All right. Thank you both very much. Thank you.